No. 27,899.

THE STATE OF KANSAS, *Appellee,* v. FRANK SARGENT, *Appellant.*

No. 27,900.

THE STATE OF KANSAS, *Appellee,* v. JULIA MURRAY, *Appellant.*

(268 Pac. 98.)

Opinion filed June 9, 1928.

*William D. Reilly, T. W. Bell,* both of Leavenworth, *J. B. McGilvray* and *Frans E. Lindquist,* both of Kansas City, Mo., for the appellants.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *Jesse A. Hall,* county attorney, *James B. Kelsey,* assistant county attorney, and *John A. McLoughlin,* deputy county attorney, all of Leavenworth, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Frank Sargent and Julia Murray were jointly charged with the burglary and larceny of the First State Bank of Lansing. On separate trials each was convicted as charged. They have filed separate appeals. The records in the two cases are similar,

and Frank Sargent has stipulated to submit on the abstract and brief filed on behalf of Julia Murray.

It appears to be conceded in this case that the bank was entered, robbed and set on fire the night of November 27, 1926, by William C. Hallisy, Pat McConnell and Lawrence Fleming, three underworld characters of Kansas City. These persons were apprehended soon after the offense was committed, made statements admitting their participation therein, and that they had been employed to do so by the appellants, Frank Sargent and Julia Murray. It was not the contention of the state that these appellants were present at the time the offenses were committed. The prosecution is for burglary in the second degree (R. S. 21-520) and larceny in connection therewith in one count under R. S. 21-524, and on the theory that prior to the actual commission of the offense they aided and abetted the same, and hence were guilty as principals under R. S. 21-105. (See *State v. Mosley*, 31 Kan. 355, 2 Pac. 782; *State v. Wolkow*, 110 Kan. 722, 726, 205 Pac. 639.)

The evidence tended to show that Julia Murray had been bookkeeper and assistant cashier in the bank for about ten years. She had been married and divorced. Frank Sargent was a contractor residing at Leavenworth. He had been married and divorced. Frank Sargent and Julia Murray had been keeping company for about a year prior to the offense charged. The bank was short in its accounts perhaps $20,000. The receiver who took charge of it soon after the offense charged, after checking it up, found it short about $27,000. Just how this shortage came about is not clearly shown.

In the latter part of November, 1926, appellants got in touch with the three persons who actually committed the offense; either Sargent or both appellants had several conferences with them, and hired them to rob the bank, take out certain of the books and deliver them later to Sargent, and set the bank building on fire so that it would burn and destroy what was left. Appellants were to leave $2,400 in a certain place in the safe, which the hired robbers were to take for their compensation. The evidence tended to show that the three persons who actually committed the offense undertook the employment on that basis; that Frank Sargent and Julia Murray together gave them actual instructions how to get into the building; that Julia Murray gave them the combination to the vault, told them where the key to the inner steel doors would be found, under a red

card in a drawer in a certain desk at the bank; told them the outer door or window that had been boarded up and used to put coal in the basement would be unlocked or open so they could enter that way. They made three trips to the bank for the purpose. On the first trip they entered the bank as appellants told them it could be entered, but made a mistake in attempting to work the combination and could not get into the vault, and left. This was reported to appellants and the mistake explained. They went back the second time; got into the building and into the vault in accordance with directions from appellants. The plan then was to take the small safe, which had a time lock on it, away with them, but it was so heavy they were not equipped to handle it. This was explained to appellants, who informed them that the catches on the time lock would be broken off so that they might open the safe. With this information they went back and entered the bank and the vault under directions given by appellants, found the time lock so they could open the safe, took out the books they were to take and the money which had been left for them, which amount proved to be only about $400 instead of $2,400, as promised, scattered inflammable oil about the building and set it on fire, and made their escape. As previously stated, they were afterwards apprehended, told this entire story in detail, and testified to it in the trial of the cases of these appellants. The fire was put out before a great deal of damage was done and the burglary and robbery discovered. The evidence which the state relied upon to sustain the conviction is almost wholly that of the three persons who committed the offenses, there being a few items of circumstantial corroborating evidence.

On this appeal appellants present several questions. It is contended, first, that the information was fatally defective. The information charges the breaking in with the intent "to commit some felony therein," and charges larceny. The statute (R. S. 21-520) uses the expression "with the intent to steal or commit any felony therein." Appellants contend that the information does not conform to the statute in alleging the purpose of the entrance. This point has no substantial merit. As provided by R. S. 21-524 the charge of the burglary and larceny were in the same count, and while it is charged that the intent was the commission of a felony, the count proceeds to charge the specific felony committed, and hence is not sufficiently indefinite to preclude a proper defense.

More than that, at the preliminary examination, held prior to the filing of the information, the evidence, which was substantially the same as at the trial, disclosed the specific felony which the state charged had been committed after the entrance, and the intent of the persons entering, hence appellants were not misled by the wording of the information. No motion to quash the information was filed. The question was raised only by a motion in arrest of judgment, under R. S. 62-1605, which permits but two questions to be raised (*State v. Yargus*, 112 Kan. 450; 211 Pac. 121), neither of which is good in this case.

Appellants contend that the evidence was not sufficient to support the verdict, hence that their demurrer, or motion for a discharge at the close of the state's evidence, should have been sustained; also their similar motion at the close of all the evidence. The brief recital of the evidence previously made discloses that this point has no merit. The testimony of those who did the actual robbery was sufficient, even if not corroborated. (*State v. Eyth*, 124 Kan. 405, 260 Pac. 976, and cases there cited.)

Appellants contend that the evidence did not disclose a breaking into the building, and hence does not support the conviction of burglary. There is some confusion in the testimony of the witnesses on behalf of the state as to whether or not the door or window through which they entered the bank building was open or simply unlocked so they could open it, which they did. The jury might very well have concluded that the door was simply unlocked so that the persons entering it could open it. But if we give the evidence the construction appellants now contend, that the door or window was actually open so that the persons who went in had to do no breaking or opening, it avails the appellants nothing in this case, for, under the evidence, that must of necessity have been done by the appellants, hence to that extent they participated in the actual burglary. It is clear from the evidence that when the cashier left the building late in the afternoon before the burglary and robbery at night that the windows and doors were all locked and securely fastened. Hence in this case it is immaterial whether the persons who went into the building and committed the actual robbery unlocked or broke open the outer door or window, or whether that was done by the appellants in order that the other parties might enter. With this construction of the evidence, which seems

inevitable, the authorities cited by appellants, that there must be an actual breaking to constitute burglary, are not in point.

Complaint is made that the court did not give an instruction that the evidence of accomplices should be received with caution. There was no request for such an instruction. In the absence of such a request the general instruction on the weight to be given to the testimony of the various witnesses was sufficient. (*State v. Ross,* 77 Kan. 341, 94 Pac. 270; *State v. Patterson,* 52 Kan. 335, 34 Pac. 784.) The same may be said of the complaint that there was no instruction on the defense of an alibi, for which there had been no request. (*State v. Nichols,* 117 Kan. 630, 232 Pac. 1058; *State v. McManaman,* 120 Kan. 376, 244 Pac. 225; *State v. Cassady,* 121 Kan. 331, 332, 246 Pac. 508.)

Complaint is made that the court received evidence of the setting fire to the building. The contention is that that was a separate offense, not alleged, and hence prejudicial. It was evidence pertaining to the conduct and acts of the parties at the time of the burglary and robbery, and is, for that reason, competent, notwithstanding the fact it may have disclosed that another offense was committed.

Complaint is made of the refusal of the court to give certain instructions requested. These, so far as they were proper, were embodied in the instructions given.

We find no error in the record, and the judgment of the court below is affirmed as to each of the appellants.