No. 47,013

State of Kansas, *Appellee,* v. George G. Lora, *Appellant.*

(515 P. 2d 1086)

 

 Opinion filed November 3, 1973. 

*Russell Shultz,* of Wichita, argued the cause and was on the brief for the appellant.

*Larry Kirby,* deputy district attorney, argued the cause, and *Vern Miller,* attorney general, *Keith Sanborn,* district attorney, and *Stephen M. Joseph,* of Counsel, of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The defendant George G. Lora in one information was charged with four burglaries, one rape, one battery and one attempted rape. The jury returned a verdict of guilty on each of these seven counts. The charges arose from a series of four burglaries occurring between October 9, 1970, and March 25, 1971, in one neighborhood in Wichita, Kansas. The burglaries occurred at the Young residence at 263 Bonnie Brae, the Shrum residence at 407 Oakwood Drive, the Cozine residence at 801 Brookfield and the Abderholden residence at 1020 North Harding.

Because of the number of charges arising from these four burglaries and because of the nature of the points raised on appeal we feel the following chart may be helpful in the discussion that follows.

| COUNT | DATE | PLACE OF OCCURRENCE | CRIME CHARGED |
|---|---|---|---|
| 1 | Oct. 9, 1970 | Young Residence | Aggravated burglary |
| 2 | " | " | Rape of Mrs. Young |
| 3 | " | " | Battery of Mrs. Young |
| 4 | Jan. 5, 1971 | Shrum Residence | Burglary |
| 5 | March 18, 1971 | Cozine Residence | Burglary |
| 6 | March 25, 1971 | Abderholden Residence | Aggravated burglary |
| 7 | " | " | Attempted rape of Mrs. Abderholden |

Defendant received consecutive sentences totalling not less than 22 years and not more than 85 years. He appeals and contends the evidence was insufficient to sustain the verdicts. It is therefore necessary for us to examine some of the evidence introduced.

As to the charges contained in Counts 1, 2 and 3 involving the Young residence there was testimony that on the morning of October 9, 1970, a man was observed in the neighborhood attempting to gain unauthorized entry through a terrace door at 407 Oakwood

Drive. He was described by an eye witness as being five feet ten inches in height, weighing 185 to 190 pounds, having dark, short, curly hair and wearing an olive green hip-length coat. When discovered by Mrs. Shrum he ran from the premises. No charge was filed in connection with this incident.

Approximately three hours later in this same neighborhood Mrs. Young returned to her home at 263 Bonnie Brae. When she unlocked the front door and stepped inside she was grabbed by a man wearing gloves and a mask. When she cried out the man knocked her to the floor, stomped and kicked her. He took Mrs. Young into the bedroom, tied her arms behind her back, threw her on the bed and raped her. He prepared to leave the house but before leaving he returned to Mrs. Young and tied her ankles with panty hose. Mrs. Young described her assailant as being five feet ten inches in height, having black, curly hair, weighing 190 to 200 pounds, wearing a green corduroy car coat, black shoes, dark trousers and speaking with an accent. She noticed that her assailant had rather plump hands and was wearing a yellow gold wedding ring with a raised, consistent, engraved design and a narrow edge around it. The mask which he was wearing had been cut from her daughter's red leotards. An examination of her house after the incident disclosed several things out of place including family pictures, cold cream and scissors.

Two months after this incident Mrs. Young received a telephone call at her home. She described the voice of the caller as being in a tenor range, very soft, articulate, a tender-type voice with an accent, probably of Spanish extraction. She recognized the voice as being that of her former assailant. The caller asked for her husband, identified himself as Bill Kirby of the First National Bank, and attempted to learn when she expected her husband to return home. No one by the name of Bill Kirby worked at the First National Bank. Nothing further came of this call. The testimony was introduced to show the pattern of conduct followed by the burglar in the Young and the Abderholden burglaries.

Around the first of May, 1971, Mrs. Young picked out George G. Lora's picture from among six or eight photographs of individuals. She identified Lora as being her assailant on October 9, 1970. One week later Mrs. Young identified Lora in a police lineup. After the lineup the police had Lora display his left hand through a small pass-window in a door. Mrs. Young recognized the ring worn on

the ring finger as being the same ring worn by her assailant on October 9, 1970. During defendant's trial a wedding ring was removed by the defendant from his finger. It was identified during the trial by Mrs. Young as the ring worn by her assailant on October 9, 1970.

Where the sufficiency of the evidence is being reviewed on appeal in a criminal case the function of the appellate court is limited to ascertaining whether there is a basis in the evidence for a reasonable inference of guilt. If such an inference appears the verdict of the jury approved by the trial court must stand. (*State v. Shaw*, 195 Kan. 677, 408 P. 2d 650; *State v. Chuning*, 201 Kan. 784, 443 P. 2d 248, cert. den. 393 U. S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712; *State v. Wade*, 203 Kan. 811, 813, 457 P. 2d 158; *State v. Kliewer*, 210 Kan. 820, Syl. ¶ 5, 504 P. 2d 580.)

The evidence is clearly sufficient in this case to support the first three counts under the above rule. We will discuss the sufficiency of the evidence on the balance of the counts later.

Defendant's next point of error is directed to the wording in those counts of the information which charged the defendant with burglary. In each of these four counts the district attorney merely alleged the defendant did on a certain day "unlawfully, wilfully, knowingly and without authority enter into and remain within a building . . . with the intent to commit a felony." The nature of the felony intended was not specified in the particular count. It is argued that the information was fatally defective, for without specifying the felony intended an accused has no way of knowing what evidence the state will present. Defendant argues that because of this failure it was impossible for him to disprove the element of intent to commit a felony. The defendant further contends that as a result of the trial court's refusal to compel the state to specify the intended felony his substantial rights were prejudiced on the four burglary counts.

Burglary is defined in K. S. A. 1972 Supp. 21-3715 and 21-3716. The latter statute relates to aggravated burglary which differs only in the added requirement that the place of the burglary be occupied by a human being during the course of the burglary. The four burglary counts were framed in the words of the statute without specifying the nature of the felony intended.

An information charging burglary is defective in form unless it specifies the ulterior felony intended by an accused in making the

unauthorized entry. ( *Champlain v. State*, 53 Wis. 2d 751, 193 N. W. 2d 868, 872; *People v. Burd*, No. 1, 13 Mich. App. 307, 164 N. W. 2d 392, 397; *Gomez v. People*, 162 Colo. 77, 424 P. 2d 387, 388-89; *Adkins v. State*, [Alaska] 389 P. 2d 915; *Bays v. State*, 240 Ind. 37, 159 N. E. 2d 393, 397-98, cert. den. 361 U. S. 972, 4 L. Ed. 2d 551, 80 S. Ct. 605; *State vs. Minnick, et al*, 53 Del. 261, 168 A. 2d 93, 95-97; *State v. Allen*, 186 N. C. 302, 119 S. E. 504, 505-06; 2 Wharton, Criminal Law, § 1039 [12th ed. 1932]; 13 Am. Jur. 2d, Burglary, § 36, p. 341; 12 C. J. S., Burglary, § 32b, p. 691.)

Such a defect does not, however, automatically result in prejudicial error. In *State v. Sargent*, 126 Kan. 200, 268 Pac. 98, the accused was charged with burglary but the ulterior felony intended was not included in the burglary charge. The accused was charged in the same information with larceny arising from the incident. In *Sargent* it is pointed out:

". . . [T]he charge of the burglary and larceny were in the same count, and while it is charged that the intent was the commission of a felony, the count proceeds to charge the specific felony committed, and hence is not sufficiently indefinite to preclude a proper defense. More than that, at the preliminary examination, held prior to the filing of the information, the evidence, which was substantially the same as at the trial, disclosed the specific felony which the state charged had been committed after the entrance, and the intent of the persons entering, hence appellants were not misled by the wording of the information. . . ." (pp. 202-203.)

A similar attack upon an information was rejected in *State v. Kelley*, 125 Kan. 805, 265 Pac. 1109, where the accused was charged with attempt to rape but the information failed to allege the overt act necessary to complete the attempt. In *Kelley* it is stated:

". . . While the information is defective in that it describes the acts in general terms instead of describing them specifically, we do not regard that fact in this case as being prejudicial to the defendant. Here there had been a preliminary examination, at which the complaining witness had testified. Defendant, therefore, knew the specific acts complained of. We do not mean to refer to the preliminary examination for the purpose of testing the sufficiency of the information, but in determining whether or not the defect of the information was prejudicial to defendant we can, of course, look to the entire record, or any part of it bearing on the point. In this case defendant knew before the information was filed the specific acts charged against him, hence the fact that the information charged them in general terms did not prevent him from making his defense, and constituted no prejudicial error as to him. . . ." (p. 806.)

If the ulterior felony intended in a burglary is made clear at the

preliminary hearing or by the context of the other charge or charges in the information the failure to allege the specific intended felony does not constitute reversible error. Such failure cannot result in surprise or be considered prejudicial to the defendant's substantial rights at the trial when the intended felony was made clear in advance of the trial.

In the present case seven witnesses testified at the preliminary hearing including Mrs. Young and Mrs. Abderholden. Mrs. Young testified as to the rape of her person. Mrs. Abderholden testified as to the acts of the defendant constituting the attempted rape of her person. The pattern of evidence surrounding each of the burglaries, such as masks worn or prepared by defendant and left at the scene of the burglaries, clearly indicated at the preliminary hearing that the specific crime intended by the burglar was rape. The testimony revealed that the defendant engaged in similar conduct after entering these four residences, which in one instance lead to rape and in another to attempted rape. The ulterior crimes intended were clearly indicated in the Young and Abderholden burglaries by the additional rape counts included in the one information. In the Shrum and Cozine burglaries the similar pattern of conduct and preparation established by evidence at the preliminary hearing coupled with the rape counts made it abundantly clear what ulterior intended felony was contended.

K. S. A. 1972 Supp. 22-3201 (5) provides:

"When a complaint, information or indictment charges a crime but fails to specify the particulars of the crime sufficiently to enable the defendant to prepare his defense the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial the state's evidence shall be confined to the particulars of the bill."

Under the above statute if defendant had some question as to the burglary charge he should have requested a bill of particulars rather than attempt by oral motion at pretrial to accomplish the purpose of the statute. There is no contention made that the four burglary counts failed to follow the wording of the burglary statutes. In *State v. Hill*, 211 Kan. 287, 507 P. 2d 342, in an analogous situation it is held that when the formal charges are clarified by facts brought out at the preliminary hearing no prejudicial error results from a denial of a motion for a bill of particulars, absent some showing of surprise or prejudice to defendant's substantial rights.

After reviewing the circumstances shown by the record in this

case we find no prejudicial error which would affect the substantial rights of defendant. There is an absence of any facts to indicate either surprise or prejudice.

Defendant next contends it was prejudicial error to permit the charge of battery contained in Count 3 to go to the jury. The thrust of his argument is that a battery occurs in every rape and the state cannot split a single offense into separate parts for purposes of prosecution. This rule is well known. Our cases on the subject clearly prohibit double prosecution for the same act. In *State v. Gauger*, 200 Kan. 515, 438 P. 2d 455, it is said:

"In the instant case there was but a single act of violence or intimidation, and that act, which was an essential element of the robbery conviction, was also relied on as constituting the separate crime of assault with intent to rob. Under such circumstances, we hold that two separate convictions cannot be carved out of the one act of criminal delinquency. This situation is clearly distinguishable from those cases where a single criminal transaction constitutes two separate offenses because evidence required to prove the two offenses would not be the same. . . ." (p. 525.)

(See also *State v. Pierce, et al.*, 205 Kan. 433, 469 P. 2d 308 and *State v. Cory*, 211 Kan. 528, 506 P. 2d 1115.)

When two offenses are charged in separate counts of one information the test to be applied in determining the duplicity is not whether the facts proved at trial are actually used to support the conviction of both offenses, it is whether the necessary elements of proof of the one crime are included in the other. (*State v. Cory*, supra; *State v. Pierce, et al.*, supra.)

The state points out that the battery charged in Count 3 of the information occurred after the rape of Mrs. Young had been completed and when defendant returned to the bedroom to tie Mrs. Young's legs and prevent her from spreading an alarm. Obviously such acts could be sufficient to constitute battery and they were not committed to overcome the woman's resistance in the course of the events constituting the rape. This would amount to a separate battery which required proof of facts not required to establish the rape. The necessary elements of such proof were not included in the rape.

The defendant-appellant in his brief makes the statement that he was prejudiced by failure of the court to properly instruct the jury on counts 2 and 3. He does not elaborate on this statement. The instructions were not included in the record on appeal and there is no showing on appeal that defendant requested additional in-

structions or objected to those given. Defendant may not claim error in the instructions given because of these omissions. (*State v. Sims*, 192 Kan. 587, 389 P. 2d 812; *State v. Greer*, 202 Kan. 212, 447 P. 2d 837; *State v. Serviora*, 206 Kan. 29, Syl. ¶ 4, 476 P. 2d 236.)

Defendant contends that Count 6 (burglary of the Abderholden residence) and Count 7 (attempted rape of Mrs. Abderholden) were duplicitous and the court erred in refusing to require the state to elect between these two counts. Defendant argues that an attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime, that the overt acts alleged in Count 7 include the entry into the premises and that since both crimes charged include the same element of entry into the premises the two charges are duplicitous. What has been previously stated herein regarding Count 3 (battery of Mrs. Young) equally applies to this contention. The testimony of Mrs. Abderholden clearly established the separate identity of both crimes charged.

Mrs. Abderholden testified that after playing tennis on the morning of March 25, she arrived at her home at 11:30 a. m. She noticed that some things in the house had been moved from their usual places. In her bedroom a bath towel and an open jar of cold cream were laying on her bed. She went to the rear door and noticed it had been damaged. The chain was hanging. She started to go out and then turned and saw a man standing in a hallway. He was wearing a mask cut from her daughter's navy blue leotards. She began screaming and started out the door. The masked man grabbed her by the shoulders. A struggle ensued and she pushed the man back into the door. The man lost his footing and Mrs. Abderholden slipped out of her coat and left the man holding the coat in his hands. She continued to scream and ran to a neighbor's house. The neighbor called the police. When the police arrived the man had disappeared, leaving his mask behind. On checking her room later Mrs. Abderholden found the scissors used in cutting the eye holes for the mask and several pictures of herself which had been moved from their usual places.

The necessary elements to prove a burglary with the intent to commit rape are not included in the elements to prove an attempt to commit a rape even though the intent to commit rape is a common element of both crimes. Burglarly is knowingly and without au-

thority entering into a building with intent to commit any felony. Rape is the act of sexual intercourse committed by a man with a woman not his wife and without her consent committed when the woman's resistance is overcome by force or fear, or under other prohibited conditions. The overt act toward perpetration of the rape which was necessary to constitute the crime of attempted rape in this case consisted of seizing Mrs. Abderholden and attempting to restrain her within the residence. The necessary elements of proof of the crime of aggravated burglary in this case are not included in those necessary to prove the crime of attempted rape or vice versa. Therefore the charges are not duplicitous.

In order to tie the four burglaries together and to bolster identification testimony the state introduced testimony and exhibits to show that the burglar in all four incidents followed a similar elaborate ritual after gaining entrance. No property of any value was taken. In all four instances the burglar located leotards, panty hose or sweaters to make masks to be worn by him. He located scissors on the premises which he used to fashion the masks. He obtained pictures of the women and moved them into a bedroom or kitchen. He located cold cream which he placed in readiness. Both Mrs. Young and Mrs. Abderholden received phone calls after the burglaries from a man whose voice they identified as being the voice of their assailant. There were various other similarities in the plans of operation followed in each burglary.

Defendant objected to the introduction of many of the exhibits, such as the pictures of the women, on the ground that such exhibits were irrelevant and immaterial. The exhibits were relevant to show the similarity of the plan or method of operation followed by the burglar in each case. The defendant was definitely identified as the burglar in the Young case. He was identified by Mrs. Abderholden in a less definite manner but with sufficient certainty to make identity of the defendant a jury question. The defendant was placed near the scenes of the Shrum and Cozine burglaries at the time of their commission by testimony from two postmen and one man trimming a hedge in the neighborhood. We believe these exhibits were properly admitted for whatever weight the jury might attach to them for the purpose of identification. Considering the evidence introduced to identify the defendant as the burglar in Count 4 (Shrum), Count 5 (Cozine) and Counts 6 and 7 (Abderholden) there appears a basis in the evidence for a reasonable

inference of guilt. The verdict of the jury was approved by the trial court and it must stand. (*State v. Shaw,* supra; *State v. Chuning,* supra; *State v. Wade,* supra.)

The defendant next contends that his in-court identification by Mrs. Young was tainted (1) by the improper use of a set of six photographs, (2) by a suggestive line-up identification at the police station with four other individuals and (3) by the display of his hand and ring through a pass-through in a door at the police station. Defendant was represented by an attorney at the police station and the attorney testified in support of a motion for new trial. We have reviewed the record before us and do not find any of the deficiencies urged by defendant sufficient to taint the defendant's in-court identification by Mrs. Young. These identifications occurred prior to adversary judicial criminal proceedings. In-court identifications may be found capable of standing on their own feet even though preceded by deficient pretrial confrontations. (*State v. Kelly,* 210 Kan. 192, 499 P. 2d 1040; *State v. Calvert,* 211 Kan. 174, 505 P. 2d 1110.) We find nothing unduly suggestive or prejudicial about the display of photographs or the police lineup. The in-court identification was sufficient standing alone.

The defendant's argument as to improper identification by reason of the ring worn by defendant is not entirely clear. The ring had been described in detail by Mrs. Young shortly after the rape occurred and before defendant was charged. Defendant wore the ring while in court during his trial. Mrs. Young identified it in court as being the ring worn by her assailant. This was relevant to an identification of the defendant. The trial court admitted the ring in evidence. There was no showing that this unfairly or harmfully surprised the defendant. The trial court properly exercised its discretion under the circumstances as provided in the statute, K. S. A. 60-445. The ring had a unique design which had been testified to by the witness prior to its introduction in evidence. We find no error in its admission.

Defendant asserts that the trial court erred in refusing to grant him a new trial on the grounds of newly discovered evidence. The evidence which he contends is newly discovered evidence consists of a report made at the request of the court, after trial and before sentencing, by the Kansas State Reception and Diagnostic Center. The report indicates that the defendant has personality problems,

is seriously disturbed and is in need of psychiatric treatment. It does not establish legal insanity.

The granting or denial of a motion for new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial court. It must be shown to the trial court's satisfaction that the alleged newly discovered evidence was not within the knowledge of the defendant at the time of his trial (*State v. Williamson*, 210 Kan. 501, 506, 502 P. 2d 777) and that such evidence could not with reasonable diligence have been produced at the trial (*State v. Oswald*, 197 Kan. 251, 256, 417 P. 2d 261). See also *State v. Collins*, 204 Kan. 55, Syl. ¶ 7, 460 P. 2d 573.

At no time during the trial did the defendant or his counsel indicate that the defendant was insane or incompetent to stand trial. Throughout the trial defendant steadfastly maintained his complete innocence of the crimes. He took the stand in his own defense and gave alibi testimony. His wife also testified in support of his alibi. There was nothing in his demeanor or testimony to indicate a possible defense of insanity. With reasonable diligence such evidence could have been produced at the trial.

Under K. S. A. 1972 Supp. 22-3429 the trial judge may refer a defendant to any mental health facility after conviction and prior to sentence for examination, evaluation and report. The Kansas State Reception and Diagnostic Center is one of those facilities. The center is under the management of the Director of Penal Institutions. When the district judge receives a report showing a need for psychiatric care and treatment which may materially aid in the rehabilitation of a defendant the court may commit the defendant for treatment. (22-3430, *supra*.) On the other hand if the defendant and society are likely to be endangered by permitting the defendant to receive treatment in a minimum security facility society must be protected. In such case treatment is left to the discretion of the Director of Penal Institutions. The sentence which defendant must serve is under commitment to the State Director of Penal Institutions. (See K. S. A. 1972 Supp. 21-4603.) The director is in charge of the reception and diagnostic center and has full control of that facility. (See K. S. A. 76-24a04.) The primary function and purpose of the center is to provide the director with information which will be helpful in treatment and rehabilitation programs initiated by the director, including treatment in one of the state hospitals.

The statement of evaluation of the defendant in the report from

the reception and diagnostic center obtained by the district judge after conviction and before sentencing has been examined and it is held not to be newly discovered evidence which would entitle defendant to a new trial. The report in this case clearly shows that defendant was at all times fully aware of his personality problems. He deliberately chose not to attempt a defense based on insanity. The information was not newly discovered evidence under the rules in *State v. Oswald,* supra, and *State v. Collins,* supra.

Defendant also contends it was error to convict him of aggravated burglary under Counts 1 (Young) and 6 (Abderholden) because there were no persons present in the house when he entered. The contention is without merit because he remained in wait until his victims returned and entered their homes. K. S. A. 1972 Supp. 21-3716 reads:

"Aggravated burglary is knowingly and without authority entering into or *remaining within any building,* mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property *in which there is some human being,* with intent to commit a felony or theft therein." (Emphasis added.)

Defendant overlooks the provision in this statute which in the alternative proscribes knowingly and without authority "remaining within any building . . . in which there is some human being, with intent to commit a felony . . ."

He further argues it was error for the court to fail to charge the jury that it might find him guilty of the lesser included offense in event it found the premises unoccupied. This contention is patently without merit. The evidence conclusively established that the owners returned while the burglar was in the residences, that the burglar thereafter raped Mrs. Young and attempted to rape Mrs. Abderholden. There was no dispute about Mrs. Young and Mrs. Abderholden being present when the ulterior felony was committed or attempted. Aggravated burglary was committed either by defendant or someone else. Failure to instruct the jury on some lesser degree of the crime charged is not ground for reversal if the evidence at the trial excludes a theory of guilt on the lesser offense. (*State v. Lott,* 207 Kan. 602, 485 P. 2d 1314.) The evidence at the trial excluded a theory of guilt on the lesser offense in the Young and Abderholden burglaries.

Various other contentions are advanced by defendant to secure a reversal, many of them were not properly encompassed in the

statement of points, such as the verdict being contrary to all the evidence and the verdict being the result of passion and prejudice. We have carefully examined all of these fringe contentions and find no prejudicial error which would justify a reversal of this case. (See K. S. A. 60-2105.)

The judgment is affirmed.