Luckert, J.,
dissenting: I disagree with the majority’s decisions (1) to overrule State v. Reed, 8 Kan. App. 2d 615, 663 P.2d 680, rev. denied 234 Kan. 1077 (1983), and its progeny and (2) to reverse Michael C. Daws’ aggravated burglary conviction because of insufficient evidence. Not only do I disagree with the majority’s reasoning that led to those decisions, I am troubled the law surrounding burglary and aggravated burglary becomes more confused under the majority’s rationale.
I disagree with the majority’s reasoning in two major respects. First, unlike tire majority, I do not believe the legislature intended to create two “means” of committing burglary simply by describing two factual circumstances that amount to burglary—that is, an unauthorized presence achieved either by an entering in or remaining within. Second, I do not read K.S.A. 2015 Supp. 21-5807(b) *795 (aggravated burglary) to require that all elements must be present at tire moment a burglar crosses the plane of a dwellings exterior wall (or that of any other structure or “means of conveyance” covered by the statute) when the State has charged only the option of “enter[ing] into.” Rather, the burglary continues as long as the burglar maintains an unauthorized presence in the dwelling, another structure, or a means of conveyance. Thus, the crime can be proven by establishing a concurrence of all the elements and attendant circumstances at some point in time while the burglar remains within the structure without authority. See 3 LaFave, Substantive Criminal Law § 21.1(g) pp. 221-22 (2d ed. 2003).
With regard to the first point of disagreement of whether the two factual circumstances constitute alternative means, I recognize our past caselaw has so held. E.g., State v. Cook, 286 Kan. 1098, 1107, 191 P.3d 294 (2008) (“Where the jury is instructed that the single offense of aggravated burglary may be committed by either the unauthorized ‘entering into’ or ‘remaining within’ a structure, an alternative means case has been presented.”). But in State v. Brown, 295 Kan. 181, 192-200, 284 P.3d 977 (2012), we clarified the analysis for determining when the legislature intended to create an alternative means crime. We explained that phrases joined by the word “or” do not necessarily constitute alternative means. Rather, if alternatives merely describe a material element or describe the factual circumstances that can prove a material element, they are options within a means rather than alternative means.
Post-Brown, in State v. Frierson, 298 Kan. 1005, 1011, 319 P.3d 515 (2014), we noted that the State had not presented any argument that the status of aggravated burglary as an alternative means crime had changed after our decision in Brown. Without a request to change our approach, we applied our prior holdings that aggravated burglary was an alternative means crime. Likewise, in this case, the State has not requested us to revisit our pre-Brown case-law. Generally, I am reluctant to decide an issue without proper argument and consideration. But failing to consider the question in this case leads the court to reverse a long line of cases and confuses the law of aggravated burglary. Consequently, it becomes necessary to reconsider whether the phrases “entering into” and “remaining *796 within” are truly alternative means, as opposed to being phrases that manifest the legislature’s intent to describe the “material element or a factual circumstance that would prove the crime [of aggravated burglary],” i.e., options within a means. See Brown, 295 Kan. at 200.
I reach this conclusion in part because of the prior statutory law and common law from which the current crimes of burglary and aggravated burglary descend. See K.S.A. 2015 Supp. 21-5103(a) (“No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state, but where a crime is denounced by any statute of this state, but not defined, the definition of such crime at common law shall be applied.”); State v. Engel, 166 Wash. 2d 572, 578-80, 210 P.3d 1007 (2009) (when determining if options stated in criminal provision create alternative means courts may look to common-law definition of crime to determine legislative intent); see also Brown, 295 Kan. at 193 (noting that Kansas has borrowed from Washington’s caselaw regarding alternative means).
The statutory crime of burglary loosely descends from the crime of breaking and entering, which was recognized at common law and in early Kansas statutes. At common law, a completed crime did not occur simply by creating a breach or an opening—a breaking. Rather, the burglar had to physically intrude into the structure, even if only momentarily. Modern statutory formulae dispense with tire breaking but still require an entry into—in other words, a presence within a structure. Nevertheless, they uniformly convey the essence of a breaking through some word or words that require proving that the burglar’s presence is not privileged. For example, statutes may use the term “unlawful,” “unauthorized,” “without consent,” or “trespass.” See 3 LaFave, Subst. Grim. L. § 21.1(a), (b), pp. 208-12. K.S.A. 2015 Supp. 21-5807(b) conveys the essence of “breaking” through tire word “unauthorized” and, in my view, uses the alternatives of entering into or remaining within to explain that the burglar must assert some physical presence inside the structure.
The phrase “remaining within” expands the reach of the modern crime beyond the reach of conduct condemned at common law— *797 that is, the mere “entering.” This “statutoiy expansion” makes “great sense” because, as Professor LaFave explains, it allows charging burglary in a situation where an individual enters the premises with authority (such as a bank customer) but remains once that authority is withdrawn or ceases (such as when the bank customer hides until tire bank closes and then steals the banks money). 3 LaFave, Subst. Crim. L. § 21.1(b), p. 212. By expanding the criminal act, the legislature did not intend to create legally distinct crimes. Instead, the intent was to describe all surreptitious factual circumstances where the presence could become unauthorized. Put simply, there is one “means” to commit burglary—unauthorized presence—and the statute describes two options.
As this court has explained, the concepts of entering in and remaining within can overlap or be distinct—a burglar can cross the plane of the outside walls and immediately exit, can both enter and remain without authority, can enter with authority and lose permission, or can have fluctuating periods where authority is granted, taken away, and perhaps even be granted again. See Frierson, 298 Kan. at 1012 (quoting State v. Gutierrez, 285 Kan. 332, 337, 172 P.3d 18 [2007]). All of these situations involve an entiy and an unauthorized presence within the structure, and the inclusion of both phrases merely describes the various factual circumstance encompassed in the range of scenarios. Such descriptions of factual circumstances do not create alternative means. See Brotan, 295 Kan. at 200.
Indeed, the factual scenario in State v. Lora, 213 Kan. 184, 515 P.2d 1086 (1973), which the majority discusses, amounts to reversible error under an alternative means analysis. In that case, the State charged Lora with both entering into and remaining within. Lora had waited for victims to return home in order to commit a rape, meaning there was no person present when he “entered in.” Nevertheless, this court upheld his aggravated burglary conviction because there was evidence that he had “remained within.” 213 Kan. at 195. Under an alternative means analysis—where evidence must support both means—Lora’s aggravated burglary conviction was reversible because insufficient evidence supported the entering into means. See Brown, 295 Kan. at 188 (noting that charges *798 of alternative means require substantial evidence to support each alternative means).
Under the majority’s holding on the alternative means issue, however, the State cannot charge both factual descriptions in every case and rely on Lora to save an aggravated burglary conviction. Practically speaking, charging a clear-cut case becomes complicated by the fear that an evidentiary discrepancy about when exactly a person entered or when exactly intent formed might lead to insufficient evidence supporting one of the theories. Splitting the crime of aggravated burglaiy into distinct parts seems an exercise in form over substance and wipes out the “good sense” the statutory expansion was intended to accomplish.
This seems especially true in light of tire continuing nature of the crime of aggravated burglary, my second point of disagreement with the majority’s opinion. For three decades since Reed, 8 Kan. App. 2d at 618, aggravated burglary occurred “whenever a human being is present in the building during the course of the burglary.” (Emphasis added.) Now here, unlike Reed, the majority does not view aggravated burglary as a continuing crime. In overruling Reed and its progeny, the majority notes that under the entering into theory a “burglary is complete as soon as unauthorized entry occurs,” regardless of whether the criminal later completes the intended ulterior crime. That is true. But that only means that at that point there is sufficient evidence to support a conviction—that does not necessarily mean tire actions constituting the offense have ended. See K.S.A. 2014 Supp. 2145807(b); see also, e.g., People v. Davis, 18 Cal. 4th 712, 718, 76 Cal. Rptr. 2d 770, 958 P.2d 1083 (1998) (“[B] urglary is complete upon the slightest partial entry of any land, with the requisite intent, even if the intended larceny is neither committed nor even attempted.”); State v. Office of Public Defender, 2012-NMSC-029, ¶ 41 285 P.3d 622 (N.M. 2012) (“‘The crime of burglary is complete when there is an unauthorized entry with the requisite intent.’”). I view the plain statutory language, which is contained in one sentence rather than in subparts of the statute, as describing what can be a continuous factual circumstance—an entering into along with a remaining within. See Brown, 295 Kan. at 196 (“[A] legislature will signal its intent to state alternative means *799 through structure, separating alternatives into distinct subsections of the same statute.”).
Indeed, “burglary is in fact a rather unique type of attempt law, as all the required elements merely comprise a step taken toward the commission of some other offense.” 3 LaFave, Subst. Crim. L. § 21.1(g), pp. 221-22. Unlike other attempt laws, burglary does not merge with the completed offense. Thus, through burglary, the legislature has authorized additional punishment for the commission or attempted commission of a crime in a particular way. See State v. McClanahan, 251 Kan. 533, 537-38, 836 P.2d 1164 (1992) (recognizing that burglary does not merge with intended theft); 3 LaFave, Subst. Crim. L. § 21.1(g), p. 222.
Some crimes, by their nature, do not happen instantaneously. Because burglary is the punishment of actions taken to accomplish, some other crime, it is hard to view it as something other than a crime that continues so long as tiróse actions are ongoing. See K.S.A. 2015 Supp. 21-5107(f) (“An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct... is terminated.); see also State v. Gainer, 227 Kan. 670, 673, 608 P.2d 968 (1980) (“To constitute a continuing offense it must plainly appear in the statute defining such offense that there is a clear legislative purpose to make the prohibited course of conduct a continuing offense.”); State v. Zimmer, 198 Kan. 479, 504, 426 P.2d 267 (“Kidnapping, which involves the detention of another, is a continuing offense.”), cert. denied 389 U.S. 933 (1967).
The United States Supreme Court explained the concept in the context of conspiracy, which, by its nature, is a continuing crime so long as the conspirators engage in overt acts towards its commission because “each days acts bring a renewed threat of the substantive evil Congress sought to prevent.” Toussie v. United States, 397 U.S. 112, 122, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970). The Reed justification echoes that same sentiment, finding evidence sufficient to support an aggravated burglary on the entering into theory regardless of when a victim became present:
“The purpose behind the aggravated burglary statute is to describe a more serious offense than simple burglary when there is the possibility of contact between the *800 victim and the burglar and die accompanying potential for a crime against the person to occur. This danger is just as great regardless of when during the burglary the victim comes to be in the building.” 8 Kan. App. 2d at 616.
Concededly, the Reed conceptualization of aggravated burglary as a continuing crime becomes strained when the focus is only on the entering into statutory language. But I read the phrases of “entering into” and “remaining within” as describing the range of factual circumstances that can be used to prove an unauthorized presence in the structure, and I suggest the legislature intended that language to convey the continuing nature of the crime. We should recognize that the Reed conceptualization of aggravated burglary as—by its nature—a continuing offense made enough sense that the legislature has not changed it for decades. See McIver v. State Highway Commission, 198 Kan. 678, 683, 426 P.2d 118 (1967) (“The failure of the legislature to disapprove the interpretation amounts to a ratification by it.”). But see In re Adoption of J.M.D., 293 Kan. 153, 166, 260 P.3d 1196 (2011) (“[T]his court has not always found that legislative inaction, even for long periods of time, precludes the subsequent correction of judicially created rules which are contrary to foe plainly worded statutes.”).
This case illustrates how splitting aggravated burglary into distinct parts confuses foe crime: Daws entered into the home when no person was present—-he completed a standard burglaiy. Later, while Daws maintained his unauthorized presence in foe home, a person came in. At that point, Daws remained within foe home. Seemingly, under foe majority analysis in this case, Daws committed a subsequent aggravated burglary that was factually and legally distinct from the initial burglaiy.
I doubt that multiple convictions for acts similar to Daws’ could withstand a multiplicity analysis because I believe it was the legislature’s intent to collapse foe two factual circumstances, thereby generally proscribing any unauthorized presence in a building with the intent to commit a felony. See State v. Schoonover, 281 Kan. 453, 471-72, 133 P.3d 48 (2006) (‘When the prosecution is based upon the same conduct, there can be only one conviction for that minimum unit of prosecution,” which is “the nature of the conduct proscribed.”). While one might argue foe rule of lenity weighs in *801 favor of reading K.S.A. 2015 Supp. 21-5807(b) to state alternative means in this case, when viewed broadly from a unit of prosecution standpoint a stronger argument can be made that lenity suggests treating the two options as descriptions of factual circumstances. I find it problematic to view aggravated burglary not as a continuing crime but as a series of completed crimes.
In essence, the majority’s rationale seems to interject confusion into the law surrounding the crime of aggravated burglary. I would not change the longstanding caselaw of this state, which has recognized aggravated burglary as a continuing crime, because I find the rationale in Reed compelling. But I would clarify the alternative means analysis in light of our decision in Brown to apply the legislative intent as merely describing factual circumstances rather than alternative means.
This would mean that, contrary to the majority’s suggestion, the State need not prove that a person was in the dwelling at the moment Daws entered without authority. The plain language of K.S.A. 2015 Supp. 21-5807(b) does not demand the concurrence if both options are read together as allowing for a continuing act. Nor is such a reading demanded by general principles of law.
The majority cites Professor LaFave for the “basic premise of Anglo-American criminal law that the physical conduct and state of mind must concur.” 1 LaFave Substantive Criminal Law § 6.3(a), p. 451 (2d ed. 2003). It then cites two cases to support its conclusion this coexistence must occur at the moment of the unauthorized entry when the State charges only the option of entering into. In one of these cases, Gutierrez, 285 Kan. at 338-39, the court held that “[t]o support a conviction for aggravated burglaiy, the intent to commit a felony and the unauthorized entering into or remaining within must at some point in time coexist.” (Emphasis added.) This language is consistent with my reading of the statute as providing for a continuing crime and does not specifically state that intent must be present at the moment of entry. The second case does support the majority’s view. See State v. Bowen, 262 Kan. 705, 709, 942 P.2d 7 (1997) (“The specific intent in an aggravated burglary, where one is charged with entering into the dwelling without authority, must exist at the time of the unauthorized entry.”).
*802 Nevertheless, the holding in Bowen and the view adopted by the majority ignores the point made by Professor LaFave in the two sentences that follow the one the majority quotes. He states:
“Although it is sometimes assumed that there cannot be such concurrence unless the mental and physical aspects exist at precisely the same moment in time, the better view is that there is a concurrence when tire defendant’s mental state actuates the physical conduct. That is, mere coincidence in point of time is not necessarily sufficient, while the lack of such unity is not necessarily a bar to conviction.” (Emphasis added.) 1 LaFave, Subst. Crim. L. § 6.3(a), p. 451.
Professor LaFave illustrates by explaining that “[t]he physical conduct might begin first but continue until the requisite state of mind occurs.” 1 LaFave, Subst. Crim. L. § 6.3(a), p. 451 n.5. He provides an example that illustrates that the various elements can occur in sequences other than only mental state actuating physical conduct. In that example of an assault case, a driver inadvertently parked a car on an officer s foot and “then, upon learning what he had done, did not move the car, as the requisite act was ‘continuing/” 1 La-Fave, Subst. Crim. L. § 6..3(a),.p. 451 n.5.
Here, we have evidence to support what Professpr LaFave considered to be tire better view, which I believe is also consistent with the plain language of the aggravated burglary statute.and legislative intent. The State proved that Daws entered the dwelling without permission and during the time he was in the dwelling without authority—i.e., during the time leading up to commission of the ulterior crime of theft—the other elements and attendant circumstances coincided. Daws held the intent to commit a theft while Ramos was also in the structure that Daws had entered without authority. See 1 LaFave, Subst. Crim. L. § 6.3(b) p. 455. I would conclude sufficient evidence supports Daws’ conviction for aggravated burglary.
Daws also argues the trial court erred in failing to instruct on the lesser included offense of burglary. Daws can successfully meet the first two tests in our standard of review for an alleged failure to give a jury instruction, which is set out in State v. Plummer, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012): (1) Daws preserved this issue by requesting the instruction during tire jury instruction conference, and (2) an instruction on burglary is legally appropriate as a lesser *803 included offense of aggravated burglary, see K.S.A. 2015 Supp. 21-5109(b)(l) (defining lesser included offense as lesser degree of same crime); K.S.A. 2015 Supp. 21-5807 (defining burglary and aggravated burglary).
In the third step of the analysis, Daws must establish that the instruction is factually appropriate because there is “some evidence which would reasonably justify a conviction of some lesser included crime.” K.S.A. 2015 Supp. 22-3414(3); Plummer, 295 Kan. 156, Syl. ¶ 1. Even if we assume Daws met that standard, in order for him to prevail we must determine the failure to give the lesser included instruction was not harmless, and I would not make this finding in Daws’ favor. Daws did not dispute Ramos’ presence in the house. The only dispute related to whether Ramos had to be present at the instant of Daws’ entiy into the house. Because I reject this legal argument, I would find that any error in failing to give a lesser included offense instruction regarding burglary was harmless.
In summary, there is no reasonable possibility that the juiy had it been instructed on the lesser included offense, would have found Daws guilty of burglary instead of aggravated burglary given tire overwhelming evidence on the element that distinguishes aggravated burglary from burglary—the presence of a person in the dwelling. See State v. Ward, 292 Kan. 541, 565, 256 P.3d 801 (2011) (If an error implicates a constitutional right, then “a Kansas court must be persuaded beyond a reasonable doubt that there was no impact on the trial’s outcome, i.e., there is no reasonable possibility that the error contributed to the verdict.”), cert. denied 132 S. Ct. 1594 (2012); see also State v. Brown, 298 Kan. 1040, 1051, 318 P.3d 1005 (2014) (if constitutional harmless error standard is met, then lower statutory standard under K.S.A. 2015 Supp. 60-261 is also satisfied).
I would affirm Daws’ conviction for aggravated burglary.
Rosen and Stegall, JJ., join in the foregoing dissenting opinion.