NOT DESIGNATED FOR PUBLICATION

No. 112,883

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

SAMUEL L. HARRIS,
*Appellant.*


MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed December 16, 2016. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., PIERRON, J., and HEBERT, S.J.

*Per Curiam*:  Samuel L. Harris appeals his jury conviction for kidnapping, robbery, and criminal threat, alleging multiple trial errors including ineffective assistance of trial counsel. Harris asked us to remand this matter to the district court for an evidentiary hearing pursuant to *State v. VanCleave*, 239 Kan. 117, 716 P.2d 580 (1986).

In an order dated January 15, 2016, this court remanded the matter to the district court "to determine whether Appellant was denied his statutory right to the effective

1

assistance of counsel at trial, including his right to testify, consistent with the Kansas Supreme Court's ruling in *State v. VanCleave*."

Upon remand, the district court found Harris was not entitled to relief on his claim for ineffective assistance of counsel and now appeals that ruling along with all the other issues previously raised. After an extensive review of all of Harris' issues raised on appeal, we find no reversible error by the district court and affirm.

FACTS

Victoria Lujan was involved in a romantic relationship with Harris. She lived alone in a triplex in Emporia. On May 3, 2013, Harris stopped by Lujan's house and would not let her go to sleep. Lujan testified she got up and asked Harris to leave, but Harris became very upset and refused. He shoved her across the bed causing her to hit her head on the wall. Harris turned on the light and saw that Lujan had a mark under one of her eyes. Harris began to panic saying, "[O]h, my gosh, what happened to your eye? Did I do that? I'm going to go back to prison. I'm going to go back to prison. I can't go back to prison." Lujan attempted to reassure Harris she was not going to call the police and encouraged him to leave; however, Harris refused to leave and instead demanded Lujan give him all of her money so he could leave town. Harris was aware Lujan withdrew $900 in cash each month to pay her rent and monthly expenses.

Lujan testified Harris "strong-arm[ed]" her from room to room in her house demanding she hand over her money. Harris initially moved Lujan from the bedroom to the bathroom. Lujan testified she thought Harris was going to use a body pillow he was holding to suffocate her. Feeling claustrophobic, Lujan told Harris she would give him the money in order to leave the small bathroom space. Harris then moved Lujan back to the bedroom where Lujan attempted to stall him by asking if she could get dressed. Harris refused to allow Lujan to get dressed telling her, "[I]f you get dressed, then you can run

2

out the door and you're not going to run outside naked." Harris then sat on the bed and said, "Lord, please forgive me for this murder I'm about to commit," before demanding to use her cell phone. Lujan fought with Harris over the cell phone before handing it over to him.

After Lujan gave Harris the cell phone, he moved her into the living room. Lujan testified she was trying to take Harris seriously, "[b]ut then at the same time, I was trying to stall everything." Lujan testified she offered Harris sex in an attempt to distract him from taking her money; however, Harris was fixated on getting her money. Lujan admitted at trial that during the ordeal she knew if she gave Harris her money he would have left.

In the living room, Harris made Lujan sit on the floor with her legs crossed and threatened to kill her dog and then to kill her if she did not give him her money. Lujan had previously been in an abusive relationship so she had prearranged with her neighbor, B.B., that if she needed help, she would bang on the adjoining wall and B.B. would then call the police. Lujan testified Harris knew about her system so he would not allow her to make any kind of noise or go near the wall.

From the living room, Harris took Lujan into the kitchen where he removed several tangled extension cords from a kitchen drawer and demanded she help him untangle them. Lujan testified she only pretended to untangle the cords in order to stall for time. Eventually, Harris became frustrated they could not untangle the cords and took Lujan back to the living room where he made her sit on the floor again. Lujan stated Harris then told her, "I'm not playing, [Lujan], I have a gun on me. I have a gun on the back side of me. I've killed three people before, it's not going to be a problem to kill you." He then punched her in the jaw with a closed fist. Lujan testified that after being punched, she gave in and went to the bedroom to get the money. Initially, Lujan only

3

gave Harris $70 to $90, but he knew there was more and demanded the rest of the money. Lujan then went back to the bedroom and retrieved the remaining cash.

After Harris had the money, he took Lujan back to the living room where he made her sit on the sofa and place two pillows over her ears while he made a phone call. Lujan heard him say, "[H]ey, man, I need to get out of town. I need to get out of town real quick. . . . I need to hurry up man. . . . You know, as a matter of fact, I'll just call you back within an hour." After the phone call, Harris started smoking a cigarette, noticed the cigarette smoke was bothering Lujan, and opened the front door. Harris then made Lujan stand next to him near the door. He told her he was going to kill her and "hog-tie" her with the orange extension cord. Lujan bolted toward the door, banging on the wall, and yelling for B.B. Harris ran from the house. In his haste, he left one sandal in the house and the other in an alley by the triplex.

B.B. died prior to trial. She was ruled an unavailable witness. B.B.'s testimony from the preliminary hearing was read to the jury and reflected she heard muffled voices coming from Lujan's house around 9 p.m. B.B. testified that when she heard yelling from Lujan's house, she knew something was wrong. Then she heard banging on the adjoining wall and she knew it was her cue to "call somebody right now." B.B. immediately called 911. As she was dialing, Lujan entered her house completely naked and crying hysterically. B.B. felt a bump on the back of Lujan's head.

At trial, Harris' friend, D.D., testified that on the night in question, he was called by Harris asking for a ride. Harris told D.D. to pick him up from the alley near Lujan's house. When Harris got in the car, D.D. noticed Harris seemed agitated and was not wearing shoes. They went to D.D.'s house. D.D. left to buy beer; Harris gave him $20 for the beer. D.D. noticed Harris had a large wad of cash. A couple of hours later, D.D. picked up N.A., Harris' other girlfriend, and brought her back to his house to hang out.

4

Harris and N.A. stayed at D.D.'s house until Monday afternoon when D.D. took them to a motel in Emporia.

Officer Daniel Delgadillo testified that in responding to the call to Lujan's house he saw Harris walking away. When Officer Delgadillo arrived at the house, he observed Lujan was visibly upset, crying, and breathing heavily. She had a red mark on her face and small scrapes on her back, legs, and big toe. There was also slight bruising on her forearms. Officer Delgadillo observed the tangled extension cords on the kitchen counter.

The jury also heard testimony from the responding emergency medical personnel about Lujan's various injuries and from the officer who photographed Lujan's injuries. The photographs were admitted into evidence.

The jury found Harris guilty of kidnapping, robbery, criminal restraint, and criminal threat. The district court vacated the criminal restraint conviction at sentencing. Harris appeals raising multiple trial errors including ineffective assistance of counsel. Harris claims his attorney denied him the right to testify and failed to call witnesses Harris wanted to testify in his defense.

Given the serious nature of Harris' claim of ineffective assistance of counsel, on January 15, 2016, this court remanded the case for a *VanCleave* hearing before addressing his multiple claims of error. The district court held a hearing on April 14, 2016, pursuant to *Van Cleave*, 239 Kan. at 119-21. The *Van Cleave* hearing covered four issues: whether trial counsel, Frederick Meier II, was ineffective for (1) not allowing Harris to testify at trial; (2) failing to call witnesses Harris wished to be called; (3) failing to file a motion to arrest judgment because the kidnapping charge failed to list all elements of the crime; and (4) whether trial counsel had a conflict of interest at sentencing because Harris wanted to fire his counsel.

At the *Van Cleave* hearing, Meier testified he had been a practicing defense attorney for more than 14 years. He discussed with Harris his right to testify and Harris was "fairly nonresponsive." Further, he discussed with Harris that asserting an alibi defense would be detrimental to his case based on the evidence the State presented at trial. Meier advised Harris that calling on alibi witnesses would be "harmful," and Meier did not want to call one. Harris responded, "Whatever." Meier interpreted Harris' response as letting Meier decide whether to present the alibi evidence.

Meier testified he carefully looked at the complaint and did not determine there were any deficiencies in the pleading. However, Meier also testified his failure to recognize the defect in the kidnapping charge had no impact on his preparation and he clearly understood the State's underlying theory of the case. To Meier, there was no confusion that the kidnapping was intended to facilitate the commission of the robbery. It appears Meier was unaware of how defective complaints are considered by the court on appeal. See *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), *overruled by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

Harris testified that he wanted to testify at his trial and present an alibi defense. Harris testified he was not informed Meier would be resting without presenting evidence.

Harris also argued the failure to file a motion to arrest judgment prejudiced him because, as a result of the failure, reviewing courts would judge the complaint under a more lenient standard. The district court gave the parties an opportunity to submit briefs on the "*Hall* issue" on the alleged defective complaint. After the parties briefed the *Hall* issue, the district court held another hearing specifically to discuss the issue.

On June 16, 2016, the district court filed its memorandum decision. The district court found Meier was not ineffective for failing to call Harris as a witness, was not

6

ineffective for failing to call alibi witnesses, and Harris was not prejudiced at sentencing by a conflict of interest.

The district court found Meier's failure to file a motion to arrest judgment based on a defective complaint fell below an objective standard of reasonableness because it "deprived the defendant of the opportunity to force the trial court to critically consider the sufficiency of the complaint." Relying on *Ferguson v. State*, 276 Kan. 428, 444, 78 P.3d 40 (2003), and *Hobby v. State*, No. 105,138, 2012 WL 4794452 (Kan. App. 2012) (unpublished opinion), *rev. denied* 297 Kan. 1245 (2013), the district court conducted a post-*Hall* analysis. It found Harris was not prejudiced in the preparation of his defense, Harris' ability to plead double jeopardy in a subsequent prosecution was not impaired, and the complaint did not limit Harris' right to a fair trial. The trial court then "indulged" Harris by conducting a pre-*Hall* analysis but found "that even had trial counsel timely filed a motion to arrest judgment, it would have been denied." The district court denied Harris' claims of ineffective assistance of counsel.

With the decision from the *Van Cleave* hearing now before us on appeal, we will proceed to address the other issues stayed on appeal pending the decision from the *Van Cleave* hearing, as follows:

(1) The sufficiency of the evidence to convict Harris of kidnapping;

(2) The district court failed to give legally and factually appropriate jury instructions;

(3) The district court failed to give a unanimity instruction for aggravated kidnapping;

(4) The district court failed to instruct on unanimity for the charge of aggravated robbery;

(5) The district court erred in not instructing criminal restraint is a lesser included offense of kidnapping and aggravated kidnapping;

7

(6)  The district court failed to properly instruct on aggravated kidnapping;

(7)  The evidence was insufficient to support the kidnapping conviction;

(8)  The statement Harris had been to prison was improperly admitted by the district court;

(9)  Harris' criminal history score was improperly calculated; and

(10)  There was cumulative error.


ANALYSIS


*Was there sufficient evidence to convict Harris of kidnapping?*


On appeal, Harris argues the evidence was insufficient to support his conviction for kidnapping because the taking and confinement of Lujan was incidental to the robbery and criminal threat.


"In determining whether the State has produced sufficient evidence to sustain a conviction, this court reviews all the evidence in the light most favorable to the prosecution and determines whether it is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Bollinger*, 302 Kan. 309, 313, 352 P.3d 1003 (2015).


K.S.A. 2015 Supp. 21-5408(a) defines kidnapping as:


"[T]he taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
    (1) For ransom, or as a shield or hostage;
    (2) to facilitate flight or the commission of any crime;
    (3) to inflict bodily injury or to terrorize the victim or another; or
    (4) to interfere with the performance of any governmental or political function."


8

The jury was instructed to decide whether Harris took or confined Lujan by force, threat, or deception with the intent to facilitate flight or the commission of any crime. Harris argues:

> "[A] fair reading of the record shows that the movement had no independent importance or significance. This was about [Harris] making a series of empty threats trying to obtain [Lujan's] money, and her refusals to the point of where she was even trying to 'stall everything.' . . . He was convicted of the criminal threat, and of the robbery.
>
> "Therefore, in this situation, the restraint and movement to different areas in this small, open apartment, seems entirely incidental to the threats in those rooms and the robbery."

In *State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976), the Kansas Supreme Court defined when a taking or confinement is considered to have been done in facilitation of the commission of another crime:

> "We therefore hold that if a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement: (a) Must not be slight, inconsequential and merely incidental to the other crime; (b) Must not be of the kind inherent in the nature of the other crime; and (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

According to Lujan's testimony, Harris moved her from the bedroom to the bathroom, to the living room, to the kitchen, back to the living room, to the bedroom, and finally back to the living room over the course of a few hours. As he moved her from room to room, Harris continued demanding Lujan give him her money. When considered in the light most favorable to the State, the evidence was sufficient for a rational factfinder to conclude beyond a reasonable doubt that Harris took Lujan from room to room with the intent to facilitate the robbery by making it substantially easier to control Lujan until she gave him the money he wanted.

9

Kansas caselaw supports this conclusion. "The moving of [a] robbery victim from room to room is not inherent in the crime of robbery." *State v. Richmond*, 258 Kan. 449, 453, 904 P.2d 974 (1995). In *Richmond*, a kidnapper forced a victim to show him where money was located within a house. Our Supreme Court noted: "By enlisting the assistance of [the victim] in finding and retrieving money, the robbery was made substantially easier for Richmond." 258 Kan. at 453. Similarly, controlling Lujan's movement until she gave him the money made the robbery substantially easier for Harris. Since the evidence shows Harris' actions helped facilitate the robbery, the evidence was sufficient to support the kidnapping conviction.

*Did the district court provide legally and factually appropriate jury instructions?*

When jury instructions are challenged on appeal:

"'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

An appellate court exercises unlimited review when the gravamen of a defendant's complaint concerns a constitutional due process challenge. *State v. Wade*, 284 Kan. 527, 534, 161 P.3d 704 (2007); but see *State v. Williams*, 295 Kan. 506, 517, 286 P.3d 195 (2012) (characterizing an issue as a constitutional claim does not advance procedural posture when instruction was not requested below).

A party cannot claim error for the district court's giving or failure to give a jury instruction unless (1) the party objects before the jury retires, stating distinctly the matter to which the party objects and the grounds for the objection or (2) the instruction or the failure to give the instruction is clearly erroneous. *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). The appellate court uses a two-step process in determining whether a challenged instruction was clearly erroneous. First, the court must consider whether there was any error at all by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record; if the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014). "Whereas the burden to show harmlessness generally shifts to the party benefitted by the error, the burden to show clear error under K.S.A. 22-3414(3) remains on the defendant." *Williams,* 295 Kan. at 516. When raising new grounds challenging an instruction not similar to the objections raised at trial, the issue is treated as a failure to object to the instruction and the clear error analysis applies. *State v. Cameron*, 300 Kan. 384, 388-89, 329 P.3d 1158, *cert. denied* 135 S. Ct. 728 (2014).

The clearly erroneous principle is not a standard of review, *i.e.*, a framework for determining whether error occurred. Instead, it supplies a basis for determining if an error requires reversal of a conviction. See *Williams*, 295 Kan. at 510-16. An appellate court need not consider whether the giving of or failure to give a jury instruction was clearly erroneous when the challenge is precluded by the invited error rule. *State v. Jones*, 295 Kan. 804, 811-12, 286 P.3d 562 (2012).

*Was a unanimity, multiple-acts instruction for aggravated kidnapping required?*

Harris now argues the evidence reflected brief restraints but it was not clear which restraint constituted the kidnapping. Since the district court did not instruct on multiple acts and the State did not elect the restraint upon which it relied, Harris argues his

conviction must be vacated. Harris did not object to the district court's failure to give a unanimity, multiple-acts instruction for aggravated kidnapping. Because Harris failed to object, he cannot claim error for the failure unless the failure to give the instruction was clearly erroneous. *Smyser*, 297 Kan. at 204.

First, this court must determine whether this case involved multiple acts.

"When multiple acts jury unanimity is an issue on appeal, the threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged crime. See *State v. Voyles,* 284 Kan. 239, Syl. ¶ 1[, 160 P.3d 794 (2007)]. This court has determined that acts are multiple acts if they are factually separate and distinct. And incidents are factually separate when independent criminal acts have occurred at different times or different locations or when a later criminal act is motivated by a 'fresh impulse.' *State v. Colston,* 290 Kan. 952, 962, 235 P.3d 1234 (2010). Factually separate and distinct incidents are not what this court calls 'unitary conduct.' 290 Kan. at 962. The factors we have used to determine the existence of unitary conduct are: '"(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." [Citation omitted.]' 290 Kan. at 962." *State v. King*, 299 Kan. 372, 379, 323 P.3d 1277 (2014).

Harris argues the State relied on the confinements in the bedroom, bathroom, living room, and kitchen and that the physical evidence and testimony reflected multiple acts of kidnapping as he moved her from room to room. In contrast, the State argues Harris' conduct amounted to one continuous unitary act and not multiple and distinct acts.

Lujan's confinement took place over a few continuous hours in her apartment. The confinement was the result of Harris trying to rob Lujan and her refusal to give up her money. Harris' actions constituted unitary conduct. There was no intervening event, and there was no fresh impulse motivating Harris' conduct. Because the jury did not hear

12

evidence of multiple acts, the district court did not err in failing to give a unanimity instruction for the aggravated kidnapping charge. The instruction was not legally or factually appropriate, thus we stop our analysis here.

*Was a unanimity, multiple-acts instruction for aggravated robbery required?*

Harris was charged in Count 2 with aggravated robbery. The jury found Harris guilty of the lesser included offense of robbery. At trial, the jury was given the following lesser included instruction:

> "To establish the charge of robbery, each of the following claims must be proved:
> "1. The defendant knowingly took property from the person or presence of Victoria Gomez Lujan;
> "2. The taking was by force or by threat of bodily harm to Victoria Gomez Lujan;
> "3. This act occurred on or about the 3rd day of May, 2013, in Lyon County, Kansas."

Harris argues the evidence reflects at least two items taken that would support the charge of robbery—the taking of money or the cell phone. While Harris did not object to the jury instruction given at trial, the State did object to the jury instruction, simply stating property instead of specifying the cell phone and/or the money. The district court limited the State to the charging document allowing the State to only argue the property referred to in the instruction was the money. To consider Harris' claim, we must determine whether the charge in Count 2 involved multiple acts.

> "When a case involves multiple acts, the jury must be unanimous in finding which specific act constitutes the crime. See K.S.A. 22-3421; *State v. Trujillo,* 296 Kan. 625, 629-32, 294 P.3d 281 (2013); *State v. Wright,* 290 Kan. 194, 201, 224 P.3d 1159 (2010); *State v. Voyles,* 284 Kan. 239, 244-45, 160 P.3d 794 (2007); see also *State v. Sanborn,* 281 Kan. 568, 569, 132 P.3d 1277 (2006) ('A unanimity instruction is used when the State charges one crime but relies on multiple acts to support that one crime.').

13

To ensure unanimity in such cases, the trial court must give the jury a unanimity instruction, or the State must elect the particular act it relies on for conviction. See *Voyles,* 284 Kan. at 244-45." *King*, 297 Kan. at 977-78.

Here, the jury instruction simply stated the defendant knowingly took property from the person or in the presence of Lujan. Harris argues

"[s]ome jurors could have disbelieved the cell phone was taken, following defense counsel's argument that [Lujan] testified [Harris] texted her the next day, perhaps showing that she had her own phone. The prosecution did not produce her cell phone at trial, nor did [D.D.] testify to seeing [Harris] with one. . . . Other jurors could have disbelieved that she gave him her money, following defense counsel's argument that her jacket pocket that she claimed to have taken it out of was ultimately found zipped up."

In response, the State contends that while it appears there were technically multiple acts testified to at trial upon which the jury could have relied for the robbery conviction, "[t]he district court did not err in failing to give a multiple acts instruction for the robbery charge as the State elected the act constituting the robbery in closing arguments."

"'The threshold question in the *Voyles* framework, over which the court exercised unlimited review, was whether the case truly involved multiple acts, *i.e.,* whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary. [Citation omitted.]" *King*, 297 Kan. at 979.

Harris' argument meets the threshold question; there were multiple acts which could have given rise to the property taken from Lujan.

"'The second step in *Voyles* was a determination of whether an error occurred. If the State did not inform the jury which act to rely upon during its deliberations and the trial court did not instruct the jury that it must be unanimous about the particular criminal

14

act that supported the conviction, there was error. *Voyles,* 284 Kan. at 244-45; see also *State v. Colston,* 290 Kan. 952, 968, 235 P.3d 1234 (2010).'" *King*, 297 Kan. at 979.

During its closing arguments, the State went through each of the counts. While discussing the aggravated robbery count, the State only referenced the taking of Lujan's money, not her cell phone. "If you move to the aggravated robbery, I don't think there's any question the State's established that Mr. Harris took monies from Ms. Lujan." The State did not reference the cell phone during its closing arguments. Because the State solely focused on the taking of Lujan's money, it elected the act constituting the robbery, and error was not committed.

Even if we find this was a multiple acts case and error was committed, we must assess "whether [this court] is firmly convinced that the jury would have reached a different verdict without the error, in which case reversal is required. Reversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3)." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). Given the facts of this case, it is unlikely the jury would have reached a different verdict without the error.

By finding Harris guilty, the jury clearly found Lujan to be a credible witness. Lujan testified Harris took both her cell phone and her money. On cross-examination, Lujan stated she bought a new phone the day after the alleged robbery and sent a text message to Harris. Furthermore, Lujan stated after she bought the new phone she had 11 text messages from Harris between the time of the incident and his arrest. If the instruction had been given solely as to the cell phone, it is possible the jury would have found it unlikely Harris would have been texting Lujan after taking her phone; however, we are not firmly convinced the jury would have reached a different verdict. See *Betancourt*, 299 Kan. at 135.

If the instruction had been given solely as to the money, at trial Lujan testified Harris took approximately $700 from her. D.D. testified that when Harris gave him $20 to purchase beer, Harris had a large sum of money; however, there was also testimony from Lujan that Harris had received $200-$300 from his dad earlier in the day that could have accounted for the large sum of cash. Despite this alternative source for the money, we are not firmly convinced the jury would have come to an alternative conclusion. There was no error by the district court.

*Is criminal restraint a lesser included offense of aggravated kidnapping?*

Harris argues the district court committed reversible error when it failed to instruct the jury on the lesser included offense of criminal restraint. Instead of criminal restraint being included as a lesser included offense of aggravated kidnapping, Harris was charged in Count 3 with aggravated kidnapping or, in the alternative, criminal restraint. Harris did not object to the jury instructions, and he did not request any lesser included offenses in Count 3. The State now admits criminal restraint has been recognized as a lesser included offense of aggravated kidnapping. However, the State claims while "the better practice may have been to instruct the jury on criminal restraint as a lesser included offense as opposed to an alternative charge to aggravated kidnapping and kidnapping if the instruction was warranted," the instructions given were not clear error.

When the giving of, or failure to give, a lesser included offense instruction is challenged on appeal, appellate courts apply the analytical framework for jury instruction issues. *State v. Armstrong,* 299 Kan. 405, 432, 324 P.3d 1052 (2014). Whether a crime is a lesser included offense of another is a question of law over which an appellate court has unlimited review. 299 Kan. at 432.

Even when an offense includes a lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually

16

appropriate under K.S.A. 2015 Supp. 22-3414(3). *State v. Molina*, 299 Kan. 651, 661, 325 P.3d 1142 (2014). Thus, """where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . , the judge *shall* instruct the jury as to the crime charged and any such lesser included crime."' [Citation omitted.]" *Armstrong*, 299 Kan. at 432. This duty to instruct applies even if the evidence is weak, inconclusive, and consists solely of the defendant's testimony, and the duty is triggered by the defendant's request for such instructions. See *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014). The standard of review is whether, after a review of all the evidence viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty of the lesser crime. *Armstrong*, 299 Kan. at 433.

When no timely objection was made to the instruction, the court must apply the analysis above and determine whether the unrequested lesser included instruction was legally and factually appropriate. If there was no error, the analysis is ended. *Armstrong*, 299 Kan. at 432. If the court finds the instruction was legally and factually appropriate, failing to give the instruction was error. As a result, the court must then determine whether it was clearly erroneous when the district court failed to give a lesser included offense instruction. *Armstrong,* 299 Kan. at 433.

*Criminal restraint was factually and legally appropriate.*

K.S.A. 2015 Supp. 21-5411(a) defines criminal restraint as "knowingly and without legal authority restraining another person so as to interfere substantially with such person's liberty." "[K]idnapping and criminal restraint are lesser included offenses of aggravated kidnapping." *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006).

It was factually and legally appropriate to give an instruction for criminal restraint as a lesser included offense. To prove Harris committed aggravated kidnapping, it was

17

the State's burden to show Harris confined Lujan, with the intent to hold her to facilitate the commission of any crime, *e.g.* aggravated robbery, and that Harris inflicted bodily harm upon Lujan. See K.S.A. 2015 Supp. 21-5408.

There was some evidence of minor bodily harm suffered by Lujan. She had scratches on her head, face, right arm, some bruising on her left shin, and a 1-inch laceration on her head. Similarly, to prove Harris committed kidnapping, the State had to show Harris confined Lujan by force, threat, or deception, with the intent to hold her to facilitate flight or the commission of any crime. Again, the evidence was not substantial. Lujan's own testimony at trial did not seem to demonstrate she actually took Harris' threats seriously as demonstrated by her repeated refusals to give him her money, her offer of sex to distract him, and her attempts to only give him part of her money. It was also not clear why Harris was moving her from room to room. Harris' actions seem to meet the statutory requirements for criminal restraint. He knowingly without legal authority restrained Lujan so as to interfere substantially with her liberty.

Additionally, despite the State's arguments on appeal that criminal restraint was not factually and legally appropriate, by charging Harris in the alternative with criminal restraint, the State appears to have conceded criminal restraint was factually and legally appropriate. The district court erred when it gave criminal restraint as an alternative to Count 3 instead of as a lesser included offense.

In order for the error to be reversible, this court must be firmly convinced the jury would have reached a different verdict had the instructional error not occurred.

> "In *State v. Winters,* 276 Kan. 34, 72 P.3d 564 (2003), the jury returned guilty verdicts on both the severity level 4 and severity level 7 aggravated battery charges, which had been charged in the alternative. The trial court had found that the charges were multiplicitous, the verdicts on the two counts therefore merged into the more serious charge, and the

18

defendant should be convicted of the level 4 aggravated battery only. The Court of Appeals reversed and remanded, ruling that the level 4 aggravated battery conviction should be vacated and sentence imposed on the level 7 aggravated battery conviction. This court reversed the Court of Appeals and affirmed the trial court. We first determined that level 7 aggravated battery is a lesser included offense of level 4 aggravated battery because all elements of the level 7 aggravated battery are identical to some of the elements of the severity level 4 aggravated battery. Because one charge is a lesser included offense of the other, it was error to instruct on these charges as if they were alternative crimes. *Winters,* 276 Kan. at 36-39. When a defendant is convicted of multiplicitous offenses, the court must vacate the lesser sentence and impose sentence only on the greater offense. *Winters,* 276 Kan. at 43." *State v. Hernandez*, 294 Kan. 200, 205, 273 P.3d 774 (2012).

Similar to *Winters*, the jury found Harris guilty of kidnapping and of its lesser included offense of criminal restraint. While it was error to charge Harris with criminal restraint in the alternative and not as a lesser included offense, the error was corrected when the district court vacated the lesser sentence of criminal restraint and imposed only the greater sentence of kidnapping. We find no clear error.

*Was an essential element in the aggravated kidnapping instruction omitted?*

On appeal, Harris argues his "kidnapping conviction must be reversed because the [jury] instruction omitted the intended crime of the kidnapping, which is an essential element." Harris argues the omission of an element of the charged offense was a fundamental constitutional error.

At trial, an instruction for aggravated kidnapping was given along with the following instruction on the lesser included offense of kidnapping:

"To establish the charge of kidnapping, each of the following claims must be proved:
"1. The defendant took or confined Victoria Gomez Lujan by force or threat;

19

"2. The defendant did so take or confine Victoria Gomez Lujan to facilitate flight or the commission of any crime;

"3. This act occurred on or about the 3rd day of May, 2013, in Lyon County, Kansas."

The instruction failed to set out the elements of the crime the kidnapping facilitated; however, separate jury instructions were given for battery, aggravated robbery, and robbery. Harris did not object to the kidnapping instruction at trial, so as previously discussed, the standard of review is clear error. "Under the constitutional error rule, an error is not harmless unless the appellate court is willing to declare beyond a reasonable doubt that the error complained of did not affect the result of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

"When a statute makes the commission of a crime or the intent to commit a crime an element of another crime, the jury instructions must set out the statutory elements of the underlying offense. See *State v. Rush,* 255 Kan. 672, 679, 877 P.2d 386 (1994) (burglary instructions must specify and give elements of predicate crime, even if trial evidence only supported possibility of one particular predicate crime); *State v. Linn,* 251 Kan. 797, 801-02, 840 P.2d 1133 (1992), *superseded by statute on other grounds State v. Hedges,* 269 Kan. 895, 8 P.3d 1259 (2000) (aggravated burglary instruction must set out elements of offense intended by accused in making unauthorized entry); *State v. Walker,* 21 Kan. App. 2d 950, 954, 910 P.2d 868 (1996) (court must instruct accurately on elements of attempt and arson that underlie attempted aggravated arson)." *State v. Richardson*, 290 Kan. 176, 182, 224 P.3d 553 (2010).

See also *State v. Chaffee*, 36 Kan. App. 2d 132, 139-43, 137 P.3d 1070 (2006) (trial court's instruction setting forth the elements of aggravated kidnapping, which failed to identify the crime which defendant was intending to facilitate, when coupled with court's response of "[n]o further answer can be given" to jury question asking whether the aggravated kidnapping instruction which stated that

the taking was done to "facilitate the commission of any crime" included the counts the defendant was charged with, was reversible error).

The district court erred when it failed to set out the statutory elements of the crime the aggravated kidnapping or kidnapping facilitated; however, this error can be harmless.

> "This court has made the omission of an element of a crime subject to harmless error analysis where the reviewing court examines the record to determine whether the omitted element was uncontested and supported by such overwhelming evidence that the jury verdict would have been the same without the omission. [Citations omitted.] Under this standard, a reviewing court 'asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' [Citation omitted.]" *Richardson*, 290 Kan. at 182-83.

In *State v. Richmond,* 258 Kan. 449, 904 P.2d 974 (1995), the jury instruction for aggravated burglary failed to give the elements for the felony the defendant intended to commit in making the unlawful entry. The State argued the instruction was not clearly erroneous because the statutory elements of aggravated robbery and rape were supplied in other instructions and thus there was little, if any, chance the jurors would have considered crimes other than aggravated robbery and rape as a reason for entering the house. The Kansas Supreme Court agreed and found that while the district court had erred, the error was harmless:

> "The defense was that [the defendant] did not commit the crime. If the jury believed that the man who was in J.J.'s house and who beat her, raped her, and stole money and goods from her house was [the defendant], there seems to have been little, if any, chance that the jurors would have considered crimes other than aggravated robbery and rape, for which the elements had been supplied, as the reason for entering the house." *Richmond*, 258 Kan. at 459.

21

Similar to *Richmond*, the district erred when it failed to give the crime the aggravated kidnapping or kidnapping helped Harris to facilitate; however, the jury was provided the elements for battery, aggravated robbery, and robbery. The jury found Harris guilty of robbery. It was clear the State was relying on the robbery of Lujan to support the crime in both instructions. There is no reasonable possibility this error changed the result of the trial. We find the error was harmless.

*Was there sufficient evidence to support an alternative means of kidnapping: To Facilitate Flight?*

On appeal, Harris argues the evidence was insufficient to support a finding of guilt on each of the alternative means for committing the crime on which the jury was instructed. In alternative means cases, cases in which a single offense may be committed in different ways, "[t]here must be jury unanimity as to guilt for the single crime charged, but not as to the particular means by which the crime was committed." *State v. Stevens*, 285 Kan. 307, 314, 172 P.3d 570 (2007), *overruled on other grounds by State v. Ahrens,* 296 Kan. 151, 158-61, 290 P.3d 629 (2012). "[T]he State is not required to elect one means or another when presenting its case to the jury or when requesting jury instructions." *State v. Littlejohn*, 298 Kan. 632, 656, 316 P.3d 136 (2014). In an alternative means case, the appellate court should apply a super sufficiency of the evidence test, meaning:

> "[T]he State must present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. Therefore, when the jury is instructed on alternative means of committing a single crime and the State fails to present sufficient evidence to support each means, reversal is required. [Citation omitted.]" *State v. Brooks*, 298 Kan. 672, 677, 317 P.3d 54 (2014).

To qualify for an alternative means analysis and application of the super-sufficiency requirement, a statute "must list distinct alternatives for a material element of the crime, not merely describe a material element or a factual circumstance that would

prove the crime." *State v. Brown*, 295 Kan. 181, 184, 284 P.3d 977 (2012). "'Options within a means—that is, the existence of options that do not state a material, distinct element—do not demand application of the super-sufficiency requirement. [Citations omitted.].' *Brown,* 295 Kan. at 197." *State v. Haberlein*, 296 Kan. 195, 207, 290 P.3d 640 (2012). "Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." *Haberlein*, 296 Kan. at 206.

The Kansas Supreme Court has previously held the language in K.S.A. 2015 Supp. 21-5408(a)(2), formerly K.S.A. 21-4320(b), "to facilitate flight or the commission of any crime" does not create alternative means.

"Haberlein next points to the following language in subsection (b) of K.S.A. 21-3420: 'to facilitate flight or the commission of any crime.' When we examine the language of the entire statute, it appears the legislature did signal through structure an intent to define alternative means of proving the *mens rea* for kidnapping and aggravated kidnapping. It did not stop with 'intent to hold' but listed several motivations for that intent to hold. Each of the subsections that follows states an additional and distinct way of committing the crime, and proof of one of these additional and distinct material elements must be shown in order to support a conviction. Thus, the different subsections create alternative means of committing a kidnapping.

"But the language on which Haberlein relies is *within* subsection (b). Facilitation of flight and facilitation of the commission of a crime are mere options within a means. The members of the legislature grouped certain potentially distinct and potentially overlapping items, which must mean they did not want jurors to have to split hairs over whether a kidnapping or aggravated kidnapping was committed to facilitate flight or the commission of any crime." *Haberlein*, 296 Kan. at 209.

When viewed in the light most favorable to the State, there was sufficient evidence to show Harris took or confined Lujan by force, threat, or deception with the intent to facilitate the robbery. Since a defendant's action to facilitate flight or the commission of a

crime does not create an alternative means issue, we do not need to analyze further. Here, Harris only argues in his brief the issue of confinement, therefore, we do not need to address whether "took or confined" in the lesser included instruction on kidnapping constituted an alternative means issue. There was sufficient evidence of kidnapping as Harris moved Lujan from room to room to find the money he was demanding she give him.

*Was Harris' statement he had previously been to prison admissible?*

On appeal, Harris argues the district court erred when it admitted Lujan's testimony regarding Harris' statements he had previously been to prison.

An appellate court must apply the statutory law on evidence as it was at the time of the challenged evidentiary ruling. *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013). Multiple inquiries are involved when the admission or exclusion of evidence is challenged on appeal.

First, a court must determine whether the evidence is relevant. Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as evidence having any tendency in reason to prove any material fact. See *State v. Bowen,* 299 Kan. 339, 348, 332 P.3d 853 (2014). This definition encompasses two elements: a materiality element and a probative element. Standards of review for each element vary.

Evidence is material when the fact it supports is in dispute or in issue in the case. *Bowen*, 299 Kan. at 348. Review for materiality is de novo. *Bowen*, 299 Kan. at 348. Evidence is probative if it has any tendency to prove any material fact. *State v. Lowrance*, 298 Kan. 274, 289, 312 P.3d 328 (2013). An appellate court reviews the district court's

assessment of the probative value of evidence under an abuse of discretion standard. *State v. Huddleston*, 298 Kan. 941, 959-60, 318 P.3d 140 (2014).

Even if evidence is relevant, a trial court has discretion to exclude it where the court finds its probative value is outweighed by its potential for producing undue prejudice. See K.S.A. 60-445. An appellate court reviews any such determination for an abuse of discretion. See *Lowrance*, 298 Kan. at 291.

A court's consideration of the admissibility of evidence can also require application of statutory rules controlling the admission and exclusion of certain types of evidence. These statutory rules are applied as a matter of law or as an exercise of the trial court's discretion, depending on the applicable rule. *Bowen*, 299 Kan. at 348. The standard of appellate review will vary accordingly.

An appellate court exercises de novo review of a challenge to the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence. *Bowen*, 299 Kan. at 349. When the question of whether the trial court complied with specific statutory requirements for admitting evidence requires interpretation of a statute, appellate review is de novo. *State v. Stafford*, 296 Kan. 25, 47, 290 P.3d 562 (2012).

The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2015 Supp. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013).

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely objection made on the record "and so stated as to make clear the specific ground of objection." *Bowen*, 299 Kan. at 351. Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012). A party may not

object at trial to the admission of evidence on one ground and then on appeal argue a different ground. See *State v. Dean,* 298 Kan. 1023, 1035-36, 324 P.3d 1023 (2014).

Prior to trial, Harris filed a motion in limine asking the district court to exclude evidence related to Harris' convictions of other crimes under K.S.A. 60-455. Specifically, he asked to exclude testimony by Lujan that Harris told her:  "[I]f you don't think I'll kill you, I never told you but I have killed three people before," and "I'm going back to prison. I'm going back to prison, I hit you. I don't put my hands on women." At the hearing on his motion, Harris argued the prejudicial effect of the statements far outweighed any probative value. Harris objected to the statements being offered as spontaneous declarations, general statements of a state of mind, or as evidence of prior bad acts under K.S.A. 60-455. The State argued the statements were highly probative. The statement, "I'm going back to prison," was probative because it showed Harris' motive for the kidnapping and robbery. The statement "I have killed three people," was probative because it formed an element of the robbery and kidnapping, namely that Harris confined Lujan and took her money by threat of bodily harm.

The district court held the statement, "I've killed three people," was not specific and thus did not qualify under K.S.A. 60-455. Further, its probative value outweighed the potential prejudice. As to the statement "I'm going back to prison," the district court found it did not refer to a specific prior bad act and thus did not qualify under K.S.A. 60-455. Furthermore, the district court held the probative value outweighed the prejudicial effect. The district court denied Harris' motion in limine. Harris renewed his objection at trial.

Both Harris and the State now seem to concede the statements are both material and probative; however, Harris now argues the prejudicial value outweighs the statements' probative value. Given Harris' current argument, we review the admission of evidence under an abuse of discretion standard. A judicial action constitutes an abuse of

26

discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of, or fails to consider, proper statutory limitations or legal standards. *State v. Ardry*, 295 Kan. 733, 736, 286 P.3d 207 (2012). As the party asserting the trial court abused its discretion, Harris bears the burden of showing such abuse of discretion. See *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

Looking first at whether the district court abused its discretion by finding the statements did not qualify under K.S.A. 2015 Supp. 60-455, we look to the statute which states:

> "(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.
> "(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Harris' statements that he did not want to go back to prison and that he had previously killed three people do not reflect Harris committed a crime on a specified occasion. In addition, even if the statements did meet the criteria in K.S.A. 2015 Supp. 60-455(a), the State offered the statements to show motive and intent. The district court did not err in finding K.S.A. 2015 Supp. 60-455 did not apply.

Next, looking at whether the district court abused its discretion in finding the probative value of the statements outweighed the prejudice, the district court did not

abuse its discretion. While the statements were highly prejudicial, a reasonable person could have concluded the statement, "I'm going to go back to prison," showed Harris' motive for turning an argument at bedtime into a multiple-hour kidnapping and robbery. Additionally, a reasonable person could have concluded the statement, "I've killed three people," showed Harris was confining Lujan by threat of force. The district court's decision was not arbitrary, fanciful, or unreasonable, based on an error of law, or based on an error of fact. Harris failed to show an abuse of discretion.

*Was Harris' criminal history properly calculated?*

Harris also argues the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution when it used his prior convictions to enhance his sentence without proving those convictions to a jury beyond a reasonable doubt, contrary to the United States Supreme Court's guidance in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Harris recognizes the Kansas Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002), but includes the issue to preserve it for federal review. Because there is no indication the Kansas Supreme Court is departing from this position, this court is duty bound to follow established precedent. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). The district court properly used Harris' criminal history to establish his sentence.

*Was there cumulative error?*

On appeal, Harris argues the cumulative effect of the overwhelming number of errors requires reversal of his kidnapping conviction.

The test is whether the totality of the circumstances establish Harris was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the

28

cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judges dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). If any of the errors being aggregated are constitutional in nature, their cumulative effect must be harmless beyond a reasonable doubt. *State v. Santos-Vega*, 299 Kan. 11, 27-28, 321 P.3d 1 (2014).

The court will find no cumulative error when the record fails to support the errors defendant raises on appeal. *State v. Betancourt*, 299 Kan. 131, 147, 322 P.3d 353 (2014). A single error cannot constitute cumulative error. *State v. Williams*, 299 Kan. 509, 566, 344 P.3d 1078 (2014), *overruled in part on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016).

There were two major errors in this case:  (1) the district court should have included criminal restraint as a lesser included offense of aggravated kidnapping, and (2) the district court omitted an essential element of the kidnaping instruction—the intended crime the kidnapping was designed to facilitate. Previously, we found those errors were harmless. Two harmless errors do not support a finding of cumulative error.

*Harris' trial counsel was not ineffective.*

On remand for a *Van Cleave* hearing, Harris raised four claims of ineffective assistance of counsel. He argued his trial counsel, Meier, was ineffective for not allowing him to testify at trial; not calling certain witnesses; failing to file a motion to arrest judgment on the kidnapping charge; and trial counsel had a conflict of interest at sentencing. On appeal, Harris only briefed the argument Meier was ineffective for failing to file a motion to arrest judgment on the kidnapping charge. An issue not briefed by the appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368

29

P.3d 1065 (2016). As such, Harris has abandoned those other three claims of ineffective assistance of counsel addressed by the district court.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. Appellate courts review the *Van Cleave* court's factual findings to determine whether the findings are support by substantial competent evidence and support the court's legal conclusions; appellate courts apply a de novo standard to the district court's conclusions of law. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

Here, the district court found Meier's failure to file the motion to arrest judgment met the first *Strickland* prong because the district court was not required to critically examine the sufficiency of the complaint. Meier testified he did not determine the pleading was deficient. He also seemed to be unaware of *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), *overruled by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), and how it handled defective complaints raised as a motion to arrest judgment versus how it handled defective complaints raised on appeal. Substantial competent evidence supports the district court's finding.

Harris argues he was prejudiced because had Meier filed a motion to arrest judgment, the court would have applied the pre-*Hall* standard and the conviction would have been vacated. The district court found Harris was not prejudiced by his counsel's deficient performance. Using the post-*Hall* standard, the district court determined Harris

was not prejudiced in the preparation of his defense and had not shown his ability to plead in subsequent prosecutions was impaired or his substantial rights to a fair trial were limited. The district court also briefly conducted a pre-*Hall* analysis and concluded that even had Harris' counsel timely filed a motion to arrest judgment, the motion would have been denied.

Shortly after the district court's memorandum decision, the Kansas Supreme Court overruled *Hall* in *Dunn*. As a general rule, a decision overruling precedent is applied to all similar cases pending as of the date of the overruling decision. *State v. Nguyen*, 281 Kan. 702, 715, 133 P.3d 1259 (2006).

There are three types of charging document defects recognized in *Dunn*. None of these defects prevents or destroys the existence of subject matter jurisdiction over criminal cases in district or appellate courts. *Dunn*, 304 Kan. at 810-11. Because each of the defects involves the interpretation of statutes, constitutional provisions, and/or written instruments, the standard or review for such challenges raised on appeal is de novo. 304 Kan. at 818.

The Kansas Supreme Court

"identified three possible types of charging document insufficiency a criminal defendant may challenge. First, either a district or appellate court may be asked to decide whether the document shows that the Kansas constitutional minimums of correct court and correct territory are met. Second, a court may be asked to evaluate whether the document alleges facts about the intent and action on the part of the defendant that, if proved beyond a reasonable doubt, would constitute violation of a Kansas criminal statute. And, third, a court may be asked to determine whether the charging document meets federal and state constitutional standards for due process and notice, such that the defendant has an opportunity to meet and answer the State's evidence and prevent double jeopardy." *Dunn*, 304 Kan. at 815.

31

Harris alleges an error of the second type—failing to allege facts that describe a Kansas crime. This both impairs the invocation of jurisdiction and risks constitutional due process and notice issues, and it requires earlier correction unless the issue is not preserved for review. 304 Kan. at 816-17. This error is subject to a harmlessness analysis under K.S.A. 2015 Supp. 60-261. *Dunn*, 304 Kan. at 817.

The amended complaint charged Harris with aggravated kidnapping without identifying the underlying crime:

> "That on or about the 3rd day of May, 2013, in Lyon County, Kansas, Samuel Lee Anthony Harris, then and there being present did unlawfully and feloniously take or confine a person, to wit: Victoria Gomez Lujan, accomplished by force, threat or deception and with the intent to hold said person to inflict bodily injury or to terrorize the victim or another; *or to facilitate flight or the commission of any crime* and with bodily harm being inflicted on Victoria Gomez Lujan. In violation of K.S.A. 2011 Supp. 21-5408(b), and against the peace and dignity of the State of Kansas. (Severity Level l Person Felony) [21.5408.b]." (Emphasis added.)

This language is nearly identical to K.S.A. 2015 Supp. 21-5408(a) and (b), which states, in relevant part:

> "(a) Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
> . . . .
> (2) to facilitate flight or the commission of any crime;
> (3) to inflict bodily injury or to terrorize the victim or another;
> . . . .
> "(b) Aggravated kidnapping is kidnapping, as defined in subsection (a), when bodily harm is inflicted upon the person kidnapped."

In *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1973), the Kansas Supreme Court addressed a similar situation. Lora was charged with four burglaries, rape, attempted rape, and a battery. The four burglary counts mirrored the wording of the statute, alleging "the defendant did on a certain day 'unlawfully, willfully, knowingly, and without authority enter into and remain within a building . . . with the intent to commit a felony.'" 213 Kan. at 187. Lora argued the information was fatally deficient because he had no way of knowing what evidence the State planned to present. The Kansas Supreme Court held: "An information charging burglary is defective in form unless it specifies the ulterior felony intended by an accused in making the unauthorized entry." 213 Kan. at 187-88.

However, it also indicated the defect was not necessarily prejudicial and further held: "If the ulterior felony intended in a burglary is made clear at the preliminary hearing or by the context of the other charge or charges in the information the failure to allege the specific intended felony does not constitute reversible error." 213 Kan. at 188-89.

Like the burglary charge in *Lora*, the aggravated kidnapping charge here required an underlying crime. Compare K.S.A. 2015 Supp. 21-5807 with K.S.A. 2015 Supp. 21-5408. The complaint charged aggravated robbery in addition to aggravated kidnapping. Further, Meier testified there was no confusion the kidnapping was intended to facilitate the commission of the robbery. He testified his failure to recognize the defect had no impact on his preparation because he clearly understood the State's underlying theory. Meier's testimony reflects the aggravated robbery charge was the underlying felony supporting the aggravated kidnapping charge.

Although the district court used the post-*Hall* analysis overruled by *Dunn*, the district court reached the correct result: Harris was not prejudiced by his trial counsel's failure to file a motion to arrest the judgment. If a district court reaches the correct result,

its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. See *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 (2015).

Affirmed.